SOUTHERN CALIFORNIA EDISON COMPANY, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 708, 3382. Promulgated November 8, 1944.

*A. Calder Mackay, Esq., Gail C. Larkin, Esq.*, and *Adam Y. Bennion, Esq.*, for the petitioner.

*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

Hill, *Judge:* The issues in this case turn on the proper interpretation of paragraph (a) of Treasury Decision 4603, approved November 9, 1935, XIV–2 C. B. 58 (1935), which reads as follows:

In determining the deductions for income tax purposes of items in respect of the refunding of bonds, the following rules shall apply in the instances specified:

(a) In the case of a retirement of an issue of old bonds from the proceeds of the sale of new bonds any amount paid in excess of the face value of the old bonds, less any amount of premium received when issued and not already returned as income, and any unamortized discount and unamortized expense attributable to such bonds, is deductible in the taxable year of their retirement. However, pursuant to the discretion vested in the Commissioner, with the approval of the Secretary, by section 1108 (a) of the Revenue Act of 1926, as finally amended by section 506 of the Revenue Act of 1934, in the case of such retirement of an old issue of bonds prior to the date of the approval of this Treasury decision, the tax for the year of retirement and subsequent taxable years will be determined on the basis of the ruling of the Bureau of Internal Revenue heretofore in existence to the effect that the items mentioned in the first sentence hereof should be prorated and amortized over the life of the new bonds (1) if the

taxable year in which the retirement occurred has been closed on that basis and the tax for such year can not be redetermined, or (2) if, where the taxable year in which such retirement occurred remains open, the taxpayer by a written communication addressed to and filed with the Commissioner of Internal Revenue, Washington, D. C. on or before January 1, 1936, gives notice of its election to have its taxes determined in accordance with such old ruling and expressly waives in such written communication its right to claim a refund or credit on the ground that such items are deductible in the taxable year in which the retirement occurred.[1]

We are concerned with the provision by which unamortized discount, premium, and expenses attributable to a bond issue retired prior to the date of approval of the Treasury decision might, at the election of the taxpayer, be amortized over the life of the new bonds, from the proceeds of the sale of which the old bonds had been retired.

The first question presented is whether petitioner has a right of election in respect of the retirement of an old issue of bonds with the proceeds from the sale of new bonds, where it made no similar election regarding other bond issues also retired between January 1 and November 9, 1935. Respondent's position is that where more than one issue of bonds is retired in an open year prior to approval of the Treasury decision there may not be an election with respect to one of those issues while deduction is taken in full in the year of retirement as to the other issue. In other words, respondent removes all emphasis from the use of the singular "a retirement," "an issue of old bonds," and "in the case of such retirement of an old issue of bonds," and reads them as plurals. Under this interpretation the phrase "in the case of a retirement of an old issue of bonds" becomes "in the case of retirements of all old issues of bonds," with the result that an election under the Treasury decision must be made with respect to all or none of the bond issues retired prior to November 9, 1935.

Petitioner contends that the Treasury decision is to be read literally, so that there is an election as to each issue of bonds.

---

[1] The remainder of the Treasury Decision is as follows:

"(b) In the case of a retirement of an issue of old bonds in part by exchange for new bonds and in part by payment in cash: (1) In respect of the portion of the old bonds retired with cash any amount paid in excess of the face value of the old bonds, less any amount of premium received when issued and not already returned as income, and any unamortized discount and unamortized expense attributable to such bonds, is deductible in the taxable year of their retirement, subject to the exception stated in paragraph (a) above; (2) in respect of the portion of the old bonds exchanged for new bonds such items shall be amortized over the life of the new bonds.

"(c) In the case of a retirement of old bonds in exchange for new bonds of the same or a greater face value, or by exchange for new bonds plus a bonus in cash, such items shall be amortized over the life of the new bonds.

"(d) In the case of a retirement of old bonds from the proceeds of the sale or issue of capital stock such items are deductible in the year in which the old bonds are retired. In the case of a retirement of old bonds through conversion or exchange for shares of capital stock of the obligor no deduction shall be allowed on account of the unamortized balances of such items in the year the bonds are retired nor shall any amortization allowances be made in respect of such items for subsequent taxable years."

Before the promulgation of the Treasury decision neither the revenue acts [2] nor the regulations [3] answered the accounting problem as to the tax treatment to be accorded unamortized discount, premium, and expenses connected with an issue of old bonds retired with the proceeds from the sale of new bonds. It was the administrative practice of the Commissioner, however, not to allow as deductions in the year of retirement the unamortized discount on old bonds and premiums and expenses paid on retirement thereof where such bonds were retired with the proceeds from the sale of new bonds. Such items were required to be spread over the life of the new bonds. This practice which required such items to be prorated over the life of the new bonds is referred to in T. D. 4603 as the old rule.

A series of decisions adverse to the Commissioner held that unamortized discount and premium paid on retirement of an old issue of bonds were deductible in full in the year of retirement, even though funds for the retirement were procured from the sale of a new issue of bonds.[4] *San Joaquin Light & Power Corporation* v. *McLaughlin*, 65 Fed. (2d) 677; *Helvering* v. *Union Public Service Co.*, 75 Fed. (2d) 723; *Helvering* v. *California Oregon Power Co.*, 75 Fed. 644; *Helvering* v. *Central States Electric Corporation*, 76 Fed. (2d) 1011. As a result, T. D. 4603 was promulgated reversing the earlier practice, except as to an issue of bonds previously retired on that basis in a year then closed and except that with respect to an issue previously retired in a year still open the taxpayer might elect to amortize the items in question over the life of the new bonds as provided in the old ruling or under the new rule if he made no election.

Both parties agree that the Treasury decision is valid and applicable. The sole dispute is as to what it means. We think that the plain language means that each issue of bonds is to be treated separately. Either the draftsman intended the taxpayer to have an election as to each bond issue, or else he did not foresee this problem. Further

---

[2] SEC. 23 [Rev. Act 1936]. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, * * *

[3] ART. 22 (a)–18 [Reg. 94]. *Sale and Purchase by corporation of its bonds.*

*       *       *       *       *       *       *

(3) (a) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. (b) If the corporation purchases any of such bonds at a price in excess of the issuing price plus any amount of discount already deducted, the excess of the purchase price over the issuing price plus any amount of discount already deducted (or over the face value minus any amount of discount not yet deducted) is a deductible expense for the taxable year.

[4] A "bond issue" is defined as "a class or series of bonds, debentures, etc., comprising all that are emitted at one and the same time." 6 Fletcher Cyclopedia of Private Corporations § 2688; *Bell County* v. *Lightfoot,* 104 Texas 346; 138 S. W. 381.

analysis reaffirms our view on first reading that the election was as to each issue and did not depend on how other issues may have been treated.

The respondent's position is that the words "an issue" have no significance in the phrase "in the case of a retirement of an issue of old bonds." He argues that, since the words are merely used as an example, the phrase has the same meaning as if it were "In the case of the retirement of old bonds." But in *San Joaquin Light & Power Co.* v. *McLaughlin, supra, Helvering* v. *California Oregon Power Co., supra,* and *Helvering* v. *Union Public Service Co., supra,* it was pointed out that the earlier Treasury regulations required each bond issue to be treated as separate and distinct. It is true that such statement was made in contrasting an old issue with the new bonds over the life of which the Commissioner had unsuccessfully sought to require the extended amortization. It is, however, also true that Treasury Decision 4603 was drafted in the light of these opinions, the last of which had been rendered on January 22, 1935, while the Treasury decision was approved November 9, 1935. The Treasury decision was intended to state a Treasury rule in accord with these decisions. Nothing could have been more natural than to specifically provide for the first time in the Treasury decision that each bond issue be treated as an entity, as had the cases. If this is true, the draftsman designedly chose the terminology, "In the case of a retirement of *an issue* of old bonds * * *. However * * * in the case of such retirement of *an old issue* of bonds * * *," in order to treat each bond issue as separate and distinct.

Whether the problem here presented occurred to the draftsman of the Treasury decision or not, certainly the plain import of the language employed required the treatment of each bond issue as an entity. For this reason the argument that the words "an issue" were used figuratively is not sound. The draftsman deliberately used "an issue" to keep the treatment of various issues separate and distinct for computations of unamortized discount and expense in each. Even if we assume that such was all the draftsman had in mind in using "an issue," it disproves the argument of respondent that the use of the term was merely exemplary and illustrative.

Furthermore, the Commissioner wrote this Treasury decision and should have known that it would cover a situation like this. He admits as much in agreeing that it is applicable. Either the Treasury decision permits an election as to each issue retired, or it is obscure on the subject and should be construed most strongly against him who wrote it.

We turn now to the second question. The new bonds (series B 3¾'s, due 1960) the proceeds of which were used to retire the old issue

in 1935 as to which petitioner elected were themselves retired in 1940 with the proceeds of the sale of a second new issue of bonds. Respondent urges that the balance of the old unamortized discount and premium and expense be carried forward over the life of the second new issue of bonds. Respondent's position is untenable for two reasons. First, it is contrary to the specific language of the Treasury decision. Petitioner elected to follow the old rule, in which case the Treasury decision provided: "* * * the tax for the year of retirement and subsequent taxable years will be determined on the basis of the ruling of the Bureau of Internal Revenue heretofore in existence to the effect that the items mentioned in the first sentence hereof should be prorated and amortized *over the life of the new bonds* * * *." (Italics added.) There is nothing here said about a second new issue of bonds which replaced this new issue. No election is provided in years after 1935. The election was given only to prevent hardship to the taxpayer who had retired his bonds before the new ruling. No such hardship exists in connection with retirements after 1935, since the taxpayer is now apprised of the new rule before he acts. Furthermore, it seems obvious that the new rule as set forth in the first sentence of paragraph (a) of the Treasury decision is controlling as to such retirement. If we consider the case of an old issue of bonds retired prior to 1935 and as to which retirement the taxable year was closed at the date of the Treasury decision, so that no election was given and the old rule was followed of amortizing over the life of the new issue, it would seem clear that on retirement of that new issue after 1935, the new rule required by the court decisions must be followed. The unamortized discount, premium, and expense must be deducted in 1940, the year of retirement.

*Decision will be entered under Rule 50.*